*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LATONYA HILL,

   Plaintiff,

and

CHARLIE DONTREZ HILL,

   Plaintiff-Appellant,

UNPUBLISHED
January 14, 2021

v

CITY OF DETROIT, DETROIT POLICE
DEPARTMENT, and UNKNOWN DETROIT
POLICE OFFICERS

   Defendants,

No. 348798
Wayne Circuit Court
LC No. 16-014268-NZ

and

DETECTIVE LAWRENCE MITCHELL,

   Defendant-Appellee.

Before: FORT HOOD, P.J., and CAVANAGH and TUKEL, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting summary disposition in favor of defendant in this action alleging gross negligence, malicious prosecution, and false arrest and imprisonment against a government employee. We affirm.

This case arises from plaintiff's three-day detention and 45-day placement on a tether after his arrest for assault with intent to commit murder and other crimes. Plaintiff was arrested based on an eyewitness identification by the victim of the shooting, Douglas Martin. Plaintiff's family thereafter hired a private investigator, Charles W. Martell, who discovered evidence exculpating

-1-

plaintiff of the crime. The investigator presented the exculpatory evidence to defendant, who was the officer-in-charge of the case, and the assistant prosecutor, Elizabeth Dornik, but they refused to dismiss the case. At the preliminary examination, Martin did not identify plaintiff and the district court dismissed the charges against him. Plaintiff and his mother, Latonya Hill, filed this action alleging constitutional violations, false arrest and imprisonment, malicious prosecution, and gross negligence against the city of Detroit, the Detroit Police Department, defendant, and unknown Detroit Police Officers. The case was removed to federal court where several of the parties and claims were dismissed and the federal court ultimately remanded the case to the trial court regarding the remaining state-law claims against defendant. On remand, plaintiff filed an amended complaint and defendant moved for summary disposition. Following a hearing, the trial court granted summary disposition in favor of defendant on the basis of governmental immunity. This appeal followed.

## I. GROSS NEGLIGENCE

Plaintiff first asserts that the trial court erred by granting defendant's motion for summary disposition because Michigan recognizes statutory gross negligence claims against government employees. We disagree.

"In order to properly preserve an issue for appeal, it must be raised before, and addressed and decided by, the trial court." *Henderson v Dep't of Treasury*, 307 Mich App 1, 7-8; 858 NW2d 733 (2014) (quotation marks and citation omitted). In response to defendant's motion for summary disposition, plaintiff argued that Michigan recognizes statutory gross negligence claims against government employees. The trial court did not expressly address this issue, but ruled that there was no evidence that defendant acted with malice or willful misconduct and granted defendant's motion for summary disposition. Nonetheless, "where the lower court record provides the necessary facts, appellate consideration of an issue raised before, but not decided by, the trial court is not precluded." *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443-444; 695 NW2d 84 (2005). Because the necessary facts are contained in the record, we may address this issue.

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Mays v Governor*, 323 Mich App 1, 24; 916 NW2d 227 (2018). Defendant moved for summary disposition under MCR 2.116(C)(7), (8), and (10). The trial court did not specify under which subrule it was granting summary disposition, but it ruled that defendant was entitled to governmental immunity. "Summary disposition under MCR 2.116(C)(7) is appropriate when a claim is barred because of immunity granted by law." *Mays*, 323 Mich App at 24.

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If no material facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law. [*Id*. at 25 (quotation marks and citations omitted).]

This issue also involves the interpretation of a statute, which we review de novo. *Bronson Health Care Group, Inc v State Auto Prop & Cas Ins Co*, 330 Mich App 338, 341; 948 NW2d 115 (2019).

"Generally, under state law, state-government employees acting within the scope of their authority are immune from tort liability unless their actions constitute gross negligence[.]" *Mays v Governor*, ___ Mich ___, ___; ___ NW2d ___ (2020) (Docket Nos. 157335 – 157337 & 157340 – 157342); slip op at 33, citing MCL 691.1407(2). This Court has held that "[t]he governmental immunity statute does not itself create a cause of action called 'gross negligence.' " *Cummins v Robinson Twp*, 283 Mich App 677, 692; 770 NW2d 421 (2009), citing *Rakowski v Sarb*, 269 Mich App 619, 627; 713 NW2d 787 (2006).

In support of his argument that Michigan recognizes statutory gross negligence claims against government employees, plaintiff relies on *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999), in which the Michigan Supreme Court stated that it would "consider the proof sufficient to survive a summary disposition of *a gross negligence claim* against a government employee." (Emphasis added.) Although the Court referred to "a gross negligence claim against a government employee," the Court expressly stated in a subsequent case that MCL 691.1407 "does not *create* a cause of action" and, instead, a plaintiff must identify a common-law duty. *Beaudrie v Henderson*, 465 Mich 124, 139 n 12; 631 NW2d 308 (2001).

Plaintiff additionally argues that his claim of statutory gross negligence is not barred because his claim is "not 100% based on his intentional tort claim." Plaintiff cites *VanVorous v Burmeister*, 262 Mich App 467, 483; 687 NW2d 132 (2004), overruled in part on other grounds by *Odom v Wayne Co*, 482 Mich 459, 473 n 33; 760 NW2d 217 (2008), in which this Court concluded that the plaintiff's claim of gross negligence was barred because it was "fully premised" on her excessive force claim. Even if it were possible for plaintiff to state a separate cause of action for gross negligence against a government employee, plaintiff's gross negligence claim is "fully premised" on his intentional tort claims in this case. In his amended complaint, plaintiff alleged in Count I (false arrest and false imprisonment) that defendants arrested him "without probable cause and thus unlawfully," defendants "unlawfully seized and detained" him, and defendants' "false arrest resulted in false imprisonment." In Count II (malicious prosecution), plaintiff alleged that defendants arrested him "without probable cause and thus unlawful," defendants "began a criminal prosecution" of plaintiff "without probable cause to arrest him," and defendants "acted without good faith and thus with malice." In Count III (gross negligence), plaintiff incorporated the allegations in Counts I and II, and further alleged that defendants' "*above wrongful conduct* was so reckless as to show a substantial lack of concern for whether injury" to plaintiff would result, and defendants' "*above wrongful conduct* was the proximate cause" of plaintiff's damages. (Emphasis added.) Because plaintiff's gross negligence claim relied on the same "wrongful conduct" as his intentional tort claims, his gross negligence claim was "fully premised" on his intentional tort claims. See *VanVorous*, 262 Mich App at 483. Accordingly, his gross negligence claim was barred.

Finally, even if plaintiff's gross negligence claim was not barred, he failed to establish that defendant was grossly negligent. "Gross negligence" is defined in the statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). As explained in *Wood v City of Detroit*, 323 Mich App 416, 423-424; 917 NW2d 709 (2018):

> Evidence of ordinary negligence is not enough to establish a material question of
> fact regarding whether a government employee was grossly negligent. Moreover,

[s]imply alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. This is true of the most exacting standard of conduct, the negligence standard, and even truer of the much less demanding standard of care, gross negligence. The latter suggests almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. Although questions regarding whether a governmental employee's conduct constituted gross negligence are generally questions of fact for the jury, if reasonable minds could not differ, summary disposition may be granted. [Quotation marks and citations omitted.]

Furthermore, "[a] police officer would be entitled to immunity . . . if he acted in good faith and honestly believed that he had probable cause to arrest, even if he later learned that he was mistaken." *Odom*, 482 Mich at 481. As discussed further below, there is no evidence that defendant acted in bad faith or that he did not honestly believe that he had probable cause to arrest plaintiff. According, defendant was not grossly negligent.

## II. GOVERNMENTAL IMMUNITY

Plaintiff also contends that he pleaded sufficient facts in avoidance of governmental immunity. We disagree.

As explained in *Odom*, 482 Mich at 480, when a plaintiff pleads an intentional tort, a court must "determine whether the defendant established that he is entitled to individual governmental immunity" by showing:

(a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

(b) the acts were undertaken in good faith, or were not undertaken with malice, and

(c) the acts were discretionary, as opposed to ministerial.

Plaintiff does not dispute that defendant acted during the course and within the scope of his employment or that the acts were discretionary. Rather, he argues that he pleaded sufficient facts showing that defendant did not act in good faith, but arbitrarily, maliciously, and recklessly.

Plaintiff argues that defendant acted with malice by (1) approving the other officers' police reports, (2) failing to investigate the drug deal, (3) failing to seek a search warrant for Martin's cell phone, (4) failing to investigate plaintiff's whereabouts that evening, (5) refusing to act on information that the arresting officers had been harassing plaintiff, and (6) refusing to receive the exculpatory evidence from Martell. As discussed further below, defendant properly relied on Martin's immediate identification to determine that he had probable cause to arrest plaintiff, and defendant was under no obligation to look further for exculpatory evidence. Furthermore, because defendant relied on the identification, there is no indication that his reliance on other officers'

police reports and refusal to act on the information from plaintiff's mother was in bad faith. Finally, the exculpatory evidence was presented after plaintiff had been arrested and charged, and it was also provided to Dornik. Accordingly, there is no evidence that defendant acted with malice.

## III. TORT CLAIMS

Plaintiff contends that the trial court erred by granting summary disposition on plaintiff's claims of malicious prosecution and false arrest and imprisonment. We disagree.

As indicated earlier, the trial court granted summary disposition pursuant to MCR 2.116(C)(7). Summary disposition is appropriate under that subrule if no material facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, and the court determines as a matter of law that a claim is barred by governmental immunity. *Mays*, 323 Mich App at 25. Plaintiff also argues that there were genuine issues of material fact with regard to his false arrest and imprisonment claim to preclude summary disposition under MCR 2.116(C)(10). "In reviewing a motion under MCR 2.116(C)(10), the trial court considers affidavits, pleadings, depositions, admissions, and other evidence introduced by the parties to determine whether no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *McLean v Dearborn*, 302 Mich App 68, 73; 836 NW2d 916 (2013).

As this Court has explained, "a tort action against a governmental entity generally raises two issues: (1) whether the plaintiff has pleaded in avoidance of governmental immunity, and (2) whether the plaintiff can establish the elements of his or her claim." *Sullivan v Michigan*, 328 Mich App 74, 79-80; 935 NW2d 413 (2019). As discussed above, the trial court properly determined that plaintiff failed to plead in avoidance of governmental immunity. Furthermore, plaintiff is unable to establish the elements of his tort claims.

### A. MALICIOUS PROSECUTION

As explained in *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 21; 672 NW2d 351 (2003), in order to prove a claim of malicious prosecution, a plaintiff must prove the following four elements:

> (1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice. [Quotation marks and citation omitted.]

It is undisputed that the criminal proceedings terminated in plaintiff's favor. Therefore, the second element is established. With regard to the first element, plaintiff argues that he presented evidence that defendant initiated a criminal prosecution against him by ordering his arrest. A criminal prosecution begins with an information or indictment. MCR 6.112(B). This Court has concluded that a police officer may be liable for malicious prosecution if he or she knowingly swears to false facts in a complaint. See *Payton v Detroit*, 211 Mich App 375, 395; 536 NW2d 233 (1995). Nonetheless, "the prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious

prosecution." *Matthews v Blue Cross & Blue Shield of Mich*, 456 Mich 365, 384; 572 NW2d 603 (1998). In this case, defendant testified that he submitted the evidence to the prosecutor's office and it was Dornik's decision whether to go forward with the case. Plaintiff did not allege that defendant submitted any false facts or evidence to the prosecutor, and defendant denied having done so. Therefore, plaintiff failed to establish the first element of a malicious prosecution claim. Although plaintiff suggests that defendant concealed evidence from Dornik, which he asserts is the "functional equivalent" to presenting false evidence, he failed to provide support for this claim. Moreover, even if defendant initiated the prosecution, plaintiff failed to establish that defendant lacked probable cause or acted with malice, as discussed below.[1]

Plaintiff's primary argument on appeal is that defendant lacked probable cause to arrest him. "Probable cause justifying an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Peterson Novelties, Inc*, 259 Mich App at 23 (quotation marks and citation omitted). "Where the facts are undisputed, the determination whether probable cause exists is a question of law for the court to decide." *Id*. at 18. Probable cause to arrest may be based on an eyewitness identification, as long as the officer did not have a reason to believe that the eyewitness lied, did not accurately describe what he saw, or was mistaken. *Ahlers v Schebil*, 188 F3d 365, 370 (CA 6, 1999). "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Id*. at 371.

In this case, defendant relied on Martin's identification of plaintiff to establish probable cause to arrest plaintiff. Plaintiff contends, however, that defendant had reason to believe that Martin was unreliable because Martin admitted that he was not in a good position to describe the shooter and because his descriptions were inconsistent. Although Martin gave inconsistent descriptions, defendant testified that Martin identified plaintiff immediately at the photographic lineup, which indicated that he was "absolutely positive" that plaintiff was the person who shot him. Defendant testified that he did not have any suspicion that Martin was lying at the photographic lineup. After Martin's positive identification, defendant was not required to look for further evidence to exculpate plaintiff. Furthermore, contrary to plaintiff's argument, the district court's determination does not "override[]" defendant's probable cause determination. First, the factual bases for those determinations differed because Martin had identified plaintiff in the

---

[1] Defendant also argues that plaintiff is collaterally estopped from arguing that defendant participated in the decision to prosecute plaintiff because the federal court held that plaintiff failed to establish this element of a malicious prosecution claim under 42 USC 1983. Defendant raised this issue below, but admitted that the federal court's order was not final and, thus, was not binding on the court. Defendant fails to address the particular elements of collateral estoppel on appeal and merely asserts that this Court "should not attempt to rel[i]tigate this issue." Therefore, he has abandoned this claim. See *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position."). Nonetheless, because plaintiff has failed to establish the other elements of his claim, it is unnecessary to reach this issue.

photographic lineup as the shooter, but did not identify plaintiff at the preliminary examination. In any event, probable cause to support an arrest is not equivalent to probable cause to bind a defendant over for trial. *People v Cohen*, 294 Mich App 70, 74; 816 NW2d 474 (2011). Because a different standard applied, the district court's dismissal of the charges is not relevant to the question whether defendant had probable cause to arrest plaintiff.

With regard to the fourth element, malice is "defined as a purpose other than that of securing the proper adjudication of the claim[.]" *Payton*, 211 Mich App at 395 (quotation marks and citation omitted). Malice may be inferred from a lack of probable cause. *Matthews*, 456 Mich at 378 n 14.[2] Plaintiff argues that malice can be inferred from the lack of probable cause in this case, as well as from other evidence. In particular, plaintiff argues that defendant refused to receive the exculpatory evidence from Martell, refused to act on information that the arresting officers had previously harassed plaintiff, failed to obtain the surveillance video from the liquor store, failed to recognize that Martin's identification was unreliable, failed to present the evidence of Martin's unreliability to Dornik, and failed to inform Dornik of defendant's own lack of investigation.

Preliminarily, because there was probable cause to arrest plaintiff, there can be no inference of malice on this basis. Furthermore, as discussed earlier, defendant's reliance on Martin's immediate identification was not improper and defendant was under no obligation to look further for exculpatory evidence. Thus, plaintiff's arguments that defendant should have investigated plaintiff's whereabouts on that evening, obtained surveillance video from the liquor store that plaintiff said he visited, interviewed other witnesses, investigated the drug transaction, searched Martin's cell phone, and informed Dornik of these failures are without merit. In addition, defendant acknowledged that plaintiff's mother called him during the investigation and accused the arresting officers of harassing plaintiff. Defendant testified, however, that regardless of whether those officers may have had a personal vendetta against plaintiff, defendant still would have conducted the photographic lineup and that his basis for requesting charges against plaintiff was the eyewitness identification. Plaintiff failed to present any evidence that defendant's failure to act on the information from plaintiff's mother showed malice. Finally, plaintiff argues that defendant's refusal to receive the exculpatory evidence from Martell established malice. However, Martell presented the evidence to defendant after charges had been filed against plaintiff and Martell also presented the evidence to Dornik. Accordingly, plaintiff failed to establish that defendant acted with malice.

---

[2] Notably, however, even if there was evidence of malice in this case, "[w]ant of probable cause may not be inferred from malice." *Matthews*, 456 Mich at 378 n 14 (quotation marks and citation omitted).

## B. FALSE ARREST AND IMPRISONMENT

"False imprisonment has been defined by this Court as an unlawful restraint on a person's liberty or freedom of movement. A false arrest is an illegal or unjustified arrest, and the guilt or innocence of the person arrested is irrelevant." *Peterson Novelties, Inc*, 259 Mich App at 17-18 (citations omitted). In order to establish a claim of false arrest or imprisonment, "a plaintiff must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Id*. at 18. "[T]he existence of probable cause is relevant to the analysis; a claim of false arrest or false imprisonment cannot be sustained if the arrest was legal." *Odom*, 482 Mich at 481. "Whether the plaintiff could actually have been convicted is irrelevant because actual innocence is not an element of false arrest." *Peterson Novelties, Inc*, 259 Mich App at 18.

For the reasons discussed above, the evidence established that defendant had probable cause to arrest plaintiff. Therefore, plaintiff failed to establish a genuine issue of material fact and summary disposition was proper on his claim of false arrest and imprisonment.

## IV. REMAND

Finally, plaintiff argues that this Court should remand this case to the trial court for further exploration of the earlier encounters between plaintiff and other police officers and defendant's alleged concealment of material facts from the assistant prosecutor. We disagree.

Plaintiff filed a motion to remand with this Court, which this Court denied "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." *Hill v City of Detroit*, unpublished order of the Court of Appeals, entered January 29, 2020 (Docket No. 348798). MCR 7.216(A)(5) provides that this Court "may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just . . . remand the case to allow additional evidence to be taken[.]"

In support of his motion to remand, plaintiff submitted several documents, including two affidavits. First, his attorney averred that a remand would be useful to determine how the earlier encounters between the police and plaintiff influenced the encounter at issue and such information would be relevant to defendant's state of mind. Plaintiff's attorney further stated that a remand would permit development of additional facts regarding defendant's disclosures to Dornik. Plaintiff also attached an affidavit from his mother, who averred that the arresting officers in this case were the same officers who had previously harassed and arrested plaintiff. She alleged that when she informed defendant of this, he was "real aggressive, rude, and threatening towards me."

Regarding plaintiff's argument that remand is necessary to develop evidence of earlier encounters between plaintiff and the police, defendant had probable cause to arrest plaintiff based on Martin's identification, regardless of any earlier encounters. Whatever earlier encounters may have occurred, they did not alter the fact that Martin had identified plaintiff as the shooter, which provided probable cause for plaintiff's arrest. Because any earlier encounters had no effect on defendant's determination of probable cause, it is unnecessary to remand to develop the facts of those earlier encounters.

Secondly, plaintiff argues that remand is necessary to explore defendant's concealment of material facts from the assistant prosecutor. However, there is no evidence that defendant did not

turn over all available evidence to Dornik. The facts that plaintiff alleges were concealed from Dornik are (1) the alleged unreliability of Martin's identification, and (2) defendant's failure to take certain actions during the investigation. There is no evidence, however, that Dornik was not aware of Martin's inconsistent descriptions or the actions that defendant did not take based on the police reports. Moreover, as discussed earlier, these alleged facts would not have affected defendant's probable cause determination. Accordingly, remand for further development of the record is unnecessary.

Affirmed.


/s/ Karen M. Fort Hood
/s/ Mark J. Cavanagh
/s/ Jonathan Tukel